**IN THE COURT OF APPEALS OF IOWA**

No. 19-0691
Filed November 6, 2019

**FAMA DIAKHOUMPA,**
    Plaintiff-Appellee,

**vs.**

**ISMAILA SARR,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.

Ismaila Sarr appeals a final domestic abuse protective order.  **AFFIRMED.**

Lynne C. Jasper, Bettendorf, for appellant.

Jennifer Wilkerson of Iowa Legal Aid, Sioux City, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Doyle, JJ.

**BOWER, Chief Judge.**

Ismaila Sarr appeals a final domestic abuse protective order issued pursuant to Iowa Code chapter 236 (2019).  Sarr and Fama Diakhoumpa are a separated couple with a minor child born in 2016.  The couple married in 2013 in Dakar, Senegal, and moved to Iowa in December 2015.

Each party alleges the other committed domestic abuse against them multiple times during the marriage.  On February 21, 2019, Sarr filed for a protective order against Diakhoumpa, alleging she had cut him and threatened to bring guys to "take care of" him.  On March 4, Diakhoumpa filed for a protective order against Sarr, alleging on February 8 Sarr had beaten her, choked her, and threatened to kill her.

On March 27, the court held a hearing on the two petitions for protective orders.  After hearing testimony from both Sarr and Diakhoumpa, the court found by a preponderance of evidence that Sarr committed domestic abuse against Diakhoumpa and represented a credible threat to her safety.  The court issued a one-year protective order for Diakhoumpa against Sarr and granted her temporary custody of their child.  The court dismissed Sarr's temporary protective order against Diakhoumpa.  Sarr appeals Diakhoumpa's protective order.

**I.     Standard of Review.**  Chapter 236 proceedings are heard in equity. *See Conklin v. Conklin*, 586 N.W.2d 703, 705 (Iowa 1998).  We review equity cases de novo.[1]  Iowa R. App. P. 6.907.  Under de novo review, "we rely on the trial

---

[1] Diakhoumpa asserts the district court tried the hearing at law by ruling on objections as they were made and, therefore, our review should be at law.  *See Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997).  Because we reach the same result under either

court's assessment of the witnesses' credibility." *Conklin*, 586 N.W.2d at 706. A plaintiff must prove an allegation of domestic abuse by a preponderance of the evidence. Iowa Code § 236.4(1).

**II.	Analysis.**	Sarr claims Diahkoumpa failed to prove by a preponderance of evidence that he committed a domestic assault upon her. In her petition for relief from domestic abuse, Diakhoumpa described an incident from February 8, 2019, alleging Sarr beat her and threatened to kill her. She did not fill out a section of the petition describing "any other injuries or threats" in the past but then discussed prior incidents at the hearing. Sarr argues he was given no notice Diahkoumpa intended to focus on prior incidents of domestic abuse. He also contends Diahkoumpa has not established the fear element of assault, asserting the delay between the February 8 incident and Diakhoumpa filing her petition for relief from domestic abuse on March 4 disproves she feared Sarr.

At the hearing, Diakhoumpa testified that on February 8, Sarr yelled at her about a transaction on her bank account and started hitting her when she would not answer. He then choked her and threatened to kill her. Diakhoumpa also testified regarding prior unreported incidents of domestic violence where Sarr struck her and she introduced photos relating to those earlier incidents into evidence. She stated he continually physically assaulted her throughout the marriage.

In his testimony, Sarr characterized the February 8 incident as a brief verbal argument, after which he took their child and left the home while both parties

---

standard of review, we need not decide if counsel's objections and the court's response resulted in trial at law.

calmed down. He testified the couple then lived together until February 21 without a problem. Sarr explained the earlier incidents Diakhoumpa claimed were domestic assaults involved her falling down the stairs when he was not home. He also disputed the timeline in her photographs.[2] Sarr also asked the court for Diakhoumpa's current address "so I know if that place is going to be a good place for my son."

Diakhoumpa's petition did not include mention of the 2016 and 2017 alleged assaults but did allege the February 8 alleged assault. "[T]he domestic abuse chapter is meant to be 'protective rather than punitive in nature . . . [and is given] 'a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.'" *Wilker v. Wilker*, 630 N.W.2d 590, 596 (Iowa 2001) (citations omitted). "[A]ll [the petitioner] had to do [is] allege enough facts to make it conceivable that [the respondent] had assaulted her." *Smith v. Smith*, 513 N.W.2d 728, 731 (Iowa 1994). A plaintiff's case can "be based, in part, on conduct and events not stated in the pleading." *Wilker*, 630 N.W.2d at 596. The earlier assault incidents were relevant to whether Diakhoumpa had reason to fear Sarr. The court could consider the prior claims of abuse in its evaluation of the present request for protective order.

Sarr claims Diakhoumpa's delay between the February 8 incident to leaving the home on February 21 and her delay in filing for a protective order on March 4 shows she was not in fear of Sarr, and the order should not have been issued.

---

[2] Sarr also testified Diakhoumpa committed prior incidents of domestic violence, including cutting his hand, which he reported to police, and pushing him on the stairs. It is unclear from the record—which does not include Sarr's petition for protective order—if Sarr provided notice to Diakhoumpa of his claims of prior domestic abuse.

"Iowa Code chapter 236 has no provision that requires a petition to be filed within a specific time after an alleged assault." *Smith*, 513 N.W.2d at 731. The time passage between the assault and request of an order may affect the relief granted by the court, but does not on its own negate the request for relief. *See id.* (allowing incidents of abuse occurring at least five months before the petition for protective order to be considered). We find this claim without merit.

Sarr claims the trial court abused its discretion in not permitting him to present a police report from May 2018 when he had called the police on Diakhoumpa. On appeal, he claims the court excluded relevant evidence in violation of his due process rights. First, the court did not exclude the report—it stated the question of the report would be addressed once a clerk returned to the courtroom—and the court proceeded with Sarr's testimony. When asked at the end of the hearing if he had anything further, Sarr did not again offer the police report. At no point did he mention his due process rights. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting ruling in order to preserve error for appeal." *Id.* The question of whether to admit the report was never decided by the district court, and Sarr filed no post-hearing motion to preserve the issue. The issue is not preserved for our review.

Even if we were to reach the merits, we would affirm. First, on this record it appears the police report was meant to support Sarr's protective order, the

dismissal of which he did not appeal.[3]  *See* Iowa R. App. P. 6.102(2).  Second, the report contains hearsay statements Sarr wished to prove his assertions.  *See* Iowa R. Evid. 5.803(8)(B)(i) (excluding investigative reports by police or other law enforcement from the public records exception to the hearsay rule).  Moreover, any impeachment value would relate to a separate domestic incident many months prior and collateral to the claim at hand.  *See State v. Neiderbach*, 837 N.W.2d 180, 207 (Iowa 2013) ("The subject of the inconsistent statement, if it is to be admissible, must be material and not collateral to the facts of the case." (citation omitted)).  The court heard the relevant information of the May 2018 incident, which was the subject of the police report, directly through Sarr's and Diakhoumpa's conflicting testimony as to what happened, Diakhoumpa's arrest, the filing of criminal charges against Diakhoumpa, and the lack of conviction regarding the incident.  Sarr suggests no other probative information the report could have provided even if admitted.  We find this claim has no merit.

The district court had the opportunity to consider the testimony of both Diakhoumpa and Sarr and evaluate their credibility.  We find a preponderance of evidence supports the district court finding that Sarr committed an incident of domestic abuse assault and he presented a credible threat to Diakhoumpa's safety.  Accordingly, we affirm the issuance of the protective order.

**AFFIRMED.**

---

[3] Whether Sarr had the police report in his possession to be admitted at the time of the hearing is unclear from the record, as he alternately stated, "It will take me some time to get the police report," and "I want to put that into evidence to show what happened that day.  Oh, right here."